Peck, P. J.
A Mayor is to be elected at the forthcoming general election to fill the vacancy created by the resignation of Mayor O’Dwyer on September 2, 1950. There are four candidates for the office, one of whom is the President of the City Council, who by virtue of the provisions of section 10 of the New York City Charter became Acting Mayor upon the creation of the vacancy. It is his contention that regardless of who is elected Mayor on November 7th next, he is to continue as Acting Mayor until January 1, 1951. The other three candidates contend that the Mayor-Elect is to assume office immediately following his election and qualification.
Plaintiff is the Comptroller of the City of New York. He states that he will refuse to pay the salaries of the Acting Mayor and the Acting President of the City Council for the period from November 8 to December 31, 1950, unless there has been a judicial determination of the controversy as to who is entitled to the office of Mayor during that period. Accordingly, the Comptroller, as plaintiff, and the four candidates for Mayor and Acting President of the City Council, as defendants, have submitted the controversy to this court.
The question is: When does the person elected Mayor at the general election take office? The New York City Charter is silent on the point. Section 10 merely provides that upon occurrence of a vacancy in the office of Mayor, the President of the City Council shall act as Mayor. The length of time he is to serve in that capacity is not indicated. In the past, whenever vacancies occurred in the office of Mayor, the Acting Mayor served until “ the first day of January succeeding the election ” at which the Mayor’s successor was chosen. That, however, was by virtue of a specific provision contained in the old Charter. It is noteworthy that this provision was not carried over into the present Charter although it appeared in one of the early drafts. The most reasonable inference that may *353 be drawn from the omission is that the provision was consciously rejected rather than unconsciously overlooked.
We are not, however, relegated to that implication for the answer to our question. While it is no more expressly answered elsewhere, the like implication is quite clearly given by other applicable provisions of law, to wit, sections 4 and 42 of the Public Officers Law. Section 4 provides: ‘ ‘ The term of office of an elective officer, unless elected to fill a vacancy then existing, shall commence on the first day of January next after his election, if the commencement thereof be not otherwise fixed by law.” (Italics ours.) As the forthcoming election is to fill an existing vacancy, commencement of the term on the 1st day of January is excluded, and inferentially the term is to commence immediately upon election and qualification. That is the fair and reasonable inference and in line with authority (Matter of Mitchell v. Prendergast, 178 App. Div. 690, affd. 222 N. Y. 543).
Section 42 of the Public Officers Law provides that where a vacancy occurs in an elective office before September 20th of any year in any office authorized to be filled at a general election, it shall be filled at the general election held next thereafter, unless otherwise provided by the Constitution or unless previously filled at a special election. It is left to the Governor’s discretion under this section of the law, where the vacancy cannot be filled by appointment for a period extending to or beyond the next general election, whether a special election shall be held. The Governor could, therefore, have ordered a special election to fill the present vacancy, and admittedly if such a special election were held the candidate elected would assume office immediately upon election and qualification, for otherwise there would be no point in a special election (Matter of Mitchell v. Prendergast, supra). Certainly it was not contemplated that the time of taking office should vary or be determined by whether the election to office was at a general election or a special election, and as the office here is one which might be filled at a special election, presumably the intention was that the successful candidate should take office upon election and qualification.
It is a general concept that where the law fails to prescribe the time when a term of office shall begin, it begins on election or appointment and qualification. The statute here is silent on that point; therefore, without more, it should be construed as contemplating the assumption of the office by the electee forthwith upon his election and proper qualification.
*354 The argument in behalf of the Acting Mayor places considerable emphasis upon what is termed the long-established tradition of an Acting Mayor continuing to serve until the Mayor-Elect assumes office on January 1, following his election. The historical precedent can hardly be termed a tradition, however, as it did not grow out of any principle of law or public policy, but was the specification of statute. Without such specification, the law on principle and policy would have been otherwise, and with the specification withdrawn we must assume that the intention was to revert to the general principle rather than to continue a statutory provision which was excised.
Counsel for the Acting Mayor also places reliance on section 38 of the Public Officers Law, which provides that the term of office of an officer “ appointed to fill a vacancy ” in an elective office shall be until the' commencement of the political year next succeeding the first annual election after the happening of the vacancy. The contention is that within the meaning of section 38 the President of the City Council is “ appointed ” and “ to fill ” the vacancy. While we doubt that the assumption of the duties of Acting Mayor by operation of law is an “ appointment ”, we think it quite clear that it is not ‘ ‘ to fill ” a vacancy. The argument ignores the distinction between acting as Mayor during the vacancy and filling the vacancy. The distinction is crucial. Indeed, it is the occasion for the election and demonstrates the inapplicability of section 38 to the present case.
When a vacancy is filled the person who fills it takes the office, including necessarily the oath of office, and by the samé token vacates any prior office. The Acting Mayor is not Mayor; nor has he taken the office of Mayor by oath or otherwise, or vacated his office as President of the City Council. He is still President of the City Council and by virtue of being President of the City Council is Acting Mayor during a vacancy in the office of Mayor. The vacancy continues and the election is to fill it. When the vacancy ends, by the election and qualification, he ceases to act as Mayor but continues as President of the City Council to the end of his elected term.
Judgment should be entered declaring that the person who shall be duly elected as Mayor of the City of New York at the general election to be held on November 7, 1950, shall, after having duly qualified, be entitled immediately to assume the office of Mayor. The answers to the submitted questions are, No. A in the affirmative, No, B in the negative, and No. C need not be answered.
Dobe, Cohn, Callahan and Van Yooehis, JJ., concur.
*355 Judgment unanimously directed to be entered declaring that the person who shall be duly elected as Mayor of the City of New York at the general election to be held on November 7, 1950, shall, after having duly qualified, be entitled immediately to assume the office of Mayor of the City of New York. The answers to the submitted questions are, No. A in the affirmative, No. B in the negative, and No. C need not be answered.